STATE OF WEST VIRGINIA

*v.*

LUCILLE S. NUCKOLLS

(No. 14701)

Decided December 19, 1980.

*Preiser & Wilson, Franklin S. Fragale, Jr., and John W. Swisher,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *S. Clark Woodroe,* Assistant Attorney General, for defendant in error.

NEELY, CHIEF JUSTICE:

Lucille S. Nuckolls appeals from her conviction for the murder of her husband, Robert E. Nuckolls, and her sentence to life imprisonment without mercy in the Circuit Court of Mercer County. The appellant assigns numerous

errors;[1] however, our disposition of the two primary assignments make it unnecessary to address the others. We award appellant a new trial primarily because the prosecutor made statements that amounted to a comment on her failure to testify. However, we have also found confusion about the propriety of an instruction offered by the defense which would have informed the jury about what would happen if the defendant were found not guilty by reason of insanity. We also take this opportunity to address that issue.

The essential facts on the evening of the homicide are not in controversy. Kevin Nuckolls, defendant's fifteen-year-old son, testified that on the evening of the shooting, 30 September 1977, he went to bed upstairs, and his mother went to sleep downstairs at about 10 or 10:30 P.M. on a "day bed," as had been her custom for several years. Kevin testified that later that evening he was suddenly awakened by an argument between his parents. He, along with his seventeen-year-old sister, Christi, who had come in and gone to sleep after Kevin, went to the top of the stairs and yelled at their parents to keep quiet. After returning to their rooms, they both subsequently heard the sound of gun shots. The two then went downstairs and found their father lying on the floor and their mother holding a pistol. Kevin and Christi tried to take the weapon from their mother, but in the ensuing struggle both children were shot and wounded. Their father, Robert Nuckolls, was killed by three gunshot wounds.

---

[1] The other errors assigned included: (1) defendant denied due process because an attorney who had been hired to represent her children had originally been appointed to serve as special prosecutor, (2) introduction of an instruction which indicated intent to kill did not have to exist for a specific length of time; (3) denial of an instruction on elements of murder and manslaughter; (4) refusal to allow individual voir dire of prospective jurors by defense; (5) court communication with a member of the jury panel alone in chambers; (6) inflammatory conduct on the part of the prosecutor; (7) denial of instruction on roles of participants after juror indicated jury was not allowed to listen to all evidence; (8) ineffective assistance of counsel; and (9) verdict not supported by evidence. Since none of these assignments will be relevant on retrial we find none of them fairly raised for discussion purposes and find all of them without merit.

The defendant did not testify but eight witnesses testified that she had a reputation for being a law-abiding citizen. The defendant's brother and the victim's sister-in-law also testified that they had seen the victim physically abuse the defendant. In addition to this testimony, the defendant introduced testimony of two psychiatrists and a psychologist, each of whom concluded that the defendant suffered from a form of schizophrenia and that she had been legally insane at the time of the shooting.

The State introduced testimony of various members of the community, all of whom testified that the Nuckolls appeared to have a good marital relationship. Dr. Weston, a psychiatric consultant hired by the State, testified that the defendant was not, in his opinion, insane at the time of the shooting. While the doctors for the defense based their conclusions on independent examinations and tests of the defendant, Doctor Weston relied on testimony presented during the trial and the reports of the doctors for the defense.

I.

We have always scrupulously protected the defendant's right not to take the stand under the Fifth Amendment to the *Constitution of the United States* and Article III, Section 5 of the *Constitution of West Virginia.*[2] In addition, under W.Va. Code, 57-3-6 [1923] the failure of a criminal defendant to testify cannot be the subject of comment before the court or jury by anyone.[3] As our Court has long recognized "the law, having brought the prisoner into court against his will, [does] not permit his silence to be treated or used as evidence against him." *State v. Taylor,* 57 W.Va. 228, 235, 50 S.E. 247, 249 (1905).

---

[2] The right to be silent at trial is based on the provision in W. Va. Const., Art. III, § 5 that says "[n]o person shall . . . be compelled to be a witness against himself." *See, State v. Boyd,* 160 W. Va. 234, 233 S.E. 2d 710 (1977); *Pinkerton v. Farr,* 159 W.Va. 223, 220 S.E. 2d 682 (1975); and, *Smith v. Oakley,* 159 W.Va. 234, 220 S.E 2d 689 (1975).

[3] *State v. Noe,* 160 W.Va. 10, 230 S.E. 2d 826 (1976); *State v. Bragg,* 140 W.Va. 585, 87 S.E. 2d 689 (1955); *State v. Jones,* 108 W.Va. 264, 150 S.E. 728 (1929); and, *State v. Costa,* 101 W.Va. 466, 132 S.E. 869 (1926).

During his closing argument the prosecuting attorney made the following statement:

> If Lucille Nuckolls hadn't killed her husband that night we wouldn't be here. I haven't seen her, you haven't seen her, nobody in the Court Room has seen her. She is a person of mystery. No one has seen her. Did any one of the psychiatrists tell you this was catatonic schizophrenia? Catatonic is when you sit and stare with no expression at all. Don't say anything, you don't do anything, and it is also a way to snow people. It is a way to get in here and act and behave so that you say, "Why look at her. She is not paying any attention. She didn't do this, she didn't do that." It is what the psychiatrists told you when she took her examination didn't they? I want to know what was in Lucille Nuckolls' mind when she killed her husband . . .

The question before us is whether that statement amounted to a comment on the failure of the defendant to testify, *State v. Noe*, 160 W.Va. 10, 230 S.E. 2d 826 (1976).[4] Our Court has allowed prosecutorial statements that did not specifically refer to the defendant's failure to testify, *State v. Simon*, 132 W.Va. 322, 52 S.E. 2d 725 (1949); however, the *Simon* exception has been limited to instances in which the prosecutor stated that the evidence was uncontroverted. Here the references to the defendant's failure to take the stand were not subtle; they were repeated accusations. While the comments were ostensibly directed at the defendant's insanity defense, they clearly amounted to a comment upon the failure of the defendant to testify.

In short, while "[w]e are aware that the intensity of the moment may be productive of language which is intemperate or overdrawn," *State v. Noe*, 160 W.Va. 10, 230 S.E. 2d 826 (1976), "the State should studiously avoid even the slightest hint as to the defendant's failure to testify". *State v. Lindsey*, 160 W.Va. 284, 233 S.E. 2d 734, 740 (1977).

---

[4] In *State v. Noe, supra,* while the statement made in closing argument was not the only error relied upon for reversal, the violation was not as egregious as the case before us since the prosecutor said only, "Now Freddie Joe Noe can't have his cake and eat it too. Now you have either got an alibi or you don't."

Our decision to award a new trial is reinforced by the prosecutor's prejudicial and inflammatory conduct during the trial. In *State v. Boyd*, 160 W.Va. 234, 233 S.E. 2d 710 (1977), we stated in syllabus point three that a prosecutor must occupy a quasi-judicial role in the trial of a criminal case and that "he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial." Yet in his closing argument, despite the fact that ABA Code DR 7-106(c) (4) requires that a lawyer not "[a]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness * * * or as to the guilt or innocence of the accused," the prosecutor said, "[i]f Lucille Nuckolls doesn't have to pay under the law, I would be the first one, as chief law enforcement officer of this county, to tell you she didn't have to."

## II.

Trial counsel for the defendant offered a brief instruction about the applicable procedure if the appellant were found not guilty by reason of insanity,[5] but the court refused the instruction on the grounds that it did not set out the proper procedure pursuant to *W. Va. Code*, 27-5-1, *et. seq.* [1979] and *W. Va. Code*, 27-6A-3 [1974], which provide for hospitalization of defendants found not guilty by reason of mental illness. Counsel then submitted a seven page instruction which outlined the proper procedure, but the court refused the instruction because it was too long, too involved, and

---

[5] The defendant's instruction said "The Court instructs the jury that in the event the defendant is found not guilty by reason of insanity, this Court may order that she be hospitalized in a mental health facility for observation and examination. You are further instructed that during such observation period, procedures for civil commitment may be initiated before this Court by the Prosecuting Attorney or any other interested party." This instruction does not fully explain the possible procedure that would result from a finding of not guilty by reason of insanity because a finding of temporary insanity may not result in a commitment unless the defendant is found to be currently insane; however, the court should have been able to fashion an acceptable instruction which would have allowed counsel for the defendant to argue more persuasively for a finding of not guilty by reason of insanity.

too complicated. After the court indicated that it would refuse the instruction, appellant's counsel withdrew the instruction since he apparently thought it confusing. In refusing the instruction the court relied on *State v. Milam*, 159 W.Va. 691, 226 S.E. 2d 433 (1976); however, in *Milam*, we held that an instruction may be refused only when the instruction does not accurately specify the procedure established by law. Here the instruction correctly presented the law; therefore, the court either should have given it or modified it to make it more intelligible. Although the instruction was withdrawn, there was sufficient confusion about the propriety of such an instruction that it was unfair to the appellant not to give some instruction on the subject.

In order to prevent this problem in the future, we hold that defense counsel is entitled to argue the consequences of finding a defendant not guilty by reason of insanity. In this regard counsel should be granted the same freedom to draw an instruction on insanity dispositions which we have accorded for parole eligibility. Consequently, as we stated in *State v. Wayne*, 162 W.Va. 41, 245 S.E 2d 838, 843 (1978), "we hold that any instruction on this issue is very much a question of trial tactics and that the defendant is entitled to *any* instruction on the subject which correctly states the law and which he deems will present the proposition in its most favorable light." Once the court has given an instruction on this subject which correctly states the law, the defendant is precluded from later assigning such instruction as error unless he objects. Therefore, syllabus point six of *State v. Grimm*, 156 W.Va. 615, 195 S.E. 2d 637 (1973) which says "[a]n instruction telling the jury the procedure to be followed if it returned a verdict of not guilty by reason of insanity is not a proper instruction, because this procedure is a matter for the court and not the jury," is expressly overruled.[6]

---

[6] We virtually overruled *State v. Grimm, supra* in *State v. Milam, supra* when we held that refusal of an instruction governing the disposition of a defendant where the jury has returned a verdict of not guilty by reason of insanity was error. In the interests of clarity, we also expressly overrule syllabus point four of *Grimm* which says: "A

For the foregoing reasons, the decision of the Circuit Court of Mercer County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*

plea of not guilty by reason of insanity is an affirmative defense, and the accused has the burden of proof on the issue of insanity which must be proved by a preponderance of the evidence."