352 S.E.2d 120

**STATE of West Virginia**

v.

**Timothy McWILLIAMS.**

**No. 16821.**

Supreme Court of Appeals of West Virginia.

Dec. 19, 1986.

James B. Lees, Preiser & Wilson, Charleston, for appellant.

Charlie Brown, Atty. Gen. and Bethany Boyd, Asst. Atty. Gen., Charleston, for appellee.

BROTHERTON, Justice:

The appellant, Timothy McWilliams, appeals a Monongalia County Circuit Court jury verdict finding him guilty of first degree murder with a recommendation of mercy, and guilty of two counts of malicious assault. The charges stemmed from an incident in which the appellant shot three young men, killing one and wounding the other two. The appellant's sole defense was insanity.

The appellant assigns the following errors: first, that the trial court improperly refused to grant the State's motion for an order of nolle prosequi; second, that the trial court improperly permitted the introduction of statements made by the appellant during a court-ordered psychiatric examination; third, that the trial court improperly instructed the jury on the disposition of the appellant if he was found not guilty by reason of insanity; fourth, that the trial court improperly quashed the subpoena of Prosecutor Thomas Newbraugh; fifth, that the trial court improperly excluded evidence of the appellant's mental condition subsequent to the shooting, and sixth, that the State failed to meet its burden of proving that the appellant was sane at the time of the shooting. We find merit in the final assignment of error, and reverse for failure to prove the appellant's sanity beyond a reasonable doubt.

On Friday evening, August 1, 1980, Timothy McWilliams entered Finnerty's, a nightclub located in the Sunnyside section of Morgantown. The victims, Allen Antonek, Michael Carter, and Donald Askew, entered the club sometime thereafter. During the course of the evening, bartender Robert Coffman overheard a portion of a conversation between McWilliams and Antonek while the two men were seated at the bar. One party stated something to the effect of: "If you want some trouble, I have got it for you," and the other party replied: "I have all the trouble you want."

The three victims left Finnerty's sometime afterward. Upon exiting the club, Antonek told Carter that someone in the bar had threatened to stuff Antonek in a trunk. The victims walked toward the stadium bridge. McWilliams left the club a few minutes later. Antonek stated to his companions that someone was following them. He left the other two and took a circuitous route to the other side of the bridge. Carter and Askew proceeded across the bridge and were confronted at the other side by McWilliams. McWilliams asked them where their "little buddy" was, and Carter responded that he had gone home. McWilliams turned to leave, but at that moment Antonek appeared and asked what the problem was. McWilliams drew a .45 caliber pistol and shot Antonek. He then turned and shot Carter and Askew as they ran away. Antonek died from his wound. Carter and Askew recovered.

The appellant's actions on the night of the crime appear in stark contrast to a very promising high school and early adult career. Timothy McWilliams graduated from Buckhannon Upshur High School in 1971. He was a member of several athletic teams

and was co-captain of the football team his senior year. His fellow students chose him to be a member of the homecoming court. He graduated in the top 10% of his class and scored in the 97th percentile on the American College Test (ACT).

Following graduation, McWilliams enlisted in the United States Marine Corps. He was assigned to the prestigious embassy guard, and he served at the American Embassies in Saudi Arabia and Tunisia. The United States government granted him top secret clearance. He was honorably discharged in November, 1975.

In January, 1976, McWilliams enrolled as a full-time engineering student at West Virginia University. He initially performed quite well, but his grades deteriorated beginning in the summer of 1978. He failed or withdrew from most courses. His behavior also started to deteriorate. McWilliams displayed many paranoid beliefs. He slept in his bathtub because he believed it would protect him if government agents tried to shoot him. He kept a shotgun in his apartment with shells lying in various places. He installed floodlights to illuminate his yard. He ate unusual foods in the belief that it would help his brain "regenerate." On July 11, 1978, he fired his shotgun into a bush, shooting the tail off a dog, in the belief that someone was in the bush who meant to do him harm. McWilliams' pattern of unusual behavior continued thereafter through the night of the shootings on August 1, 1980.

McWilliams was arrested near his Morgantown apartment on August 3, 1980. On September 4, 1980, a Monongalia County grand jury indicted him for first degree murder, W.Va.Code § 61–2–1 (1984), and two counts of malicious assault, W.Va.Code § 61–2–9 (1984).

Dr. Wilbur Sine, a psychiatrist, and Dr. Jo Ledwell, a psychologist, examined McWilliams following his indictment. On the basis of their reports, the trial court found McWilliams competent to stand trial by report dated June 11, 1981. However, certain deficiencies appeared in the testing procedures used by Dr. Ledwell. The trial court therefore ordered Dr. Patricia Williams, a psychiatrist, to perform further tests. Dr. Joel Allen, a psychiatrist retained by the defense, also examined McWilliams. The trial court held an evidentiary hearing on April 26, 1982, and concluded that McWilliams was not competent to stand trial. The trial court committed McWilliams to Weston State Hospital for a six-month improvement period pursuant to W.Va.Code § 27–6A–2 (1980). On July 16, 1982, while McWilliams was at Weston, the State moved for an order of nolle prosequi. The trial court denied the motion. On November 10, 1982, the appellant requested continued treatment at Weston by motion pursuant to W.Va.Code § 27–6A–5 (1980). The trial court granted the motion. On April 21, 1983, the trial court ordered an additional improvement period for the appellant at Weston pursuant to W.Va.Code § 27–6A–2 (1980).

After McWilliams had undergone almost two years of treatment at Weston, the trial court held another evidentiary hearing and concluded that he was competent to stand trial. A jury trial began in Monongalia County Circuit Court on March 13, 1984. A mistrial was declared on March 17, 1984, after the jury was unable to reach a verdict. A second trial began on October 29, 1984. The jury returned the guilty verdicts on November 2, 1984.

## I.

The appellant's first assignment of error is that the trial court improperly refused to grant the State's motion for an order of nolle prosequi. In support of its motion, the State noted that, at that time, three psychiatrists had examined McWilliams and that all three had concluded that McWilliams' mental disorder interfered with his capacity to appreciate the criminality of his acts.

■ The appellant argues that because of the volume of evidence that McWilliams was suffering from a mental disorder which interfered with his criminal capacity, the trial court was required to grant the State's motion. We do not agree. A prosecutor cannot dismiss criminal charges without the prior approval of the court.

See syl. pt. 1, *Denham v. Robinson*, 72 W.Va. 243, 77 S.E. 970 (1913); W.Va. R.Crim.P. 48(a). The State sought approval from the trial court for dismissing the charges, but was denied. If the trial court was required to grant the motion, the requirement that court approval be obtained to dismiss criminal charges would be rendered meaningless.

■ In support of his argument, the appellant cites syllabus point 1 of *State ex rel. Walton v. Casey*, 163 W.Va. 208, 258 S.E.2d 114 (1979), which states: "A criminal trial is unwarranted when pretrial psychiatric examinations clearly reveal by a preponderance of the evidence, that the accused at the time the crime was committed, was not criminally responsible for his acts." However, we have stated that the decision whether to adopt the policy of this rule is within the discretion of the trial court and the prosecutor. *State ex rel. Smith v. Scott*, 167 W.Va. 231, 280 S.E.2d 811, 814 (1981). Absent an abuse of discretion, we will not disturb a decision made by the trial court and the prosecutor on this issue. On the facts of this case, we find no abuse of discretion. Therefore, we find no error in the denial of the State's motion.

## II.

■ The appellant's second assignment of error is that the trial court improperly permitted the introduction of statements made by the appellant during a court-ordered psychiatric examination. Dr. Patricia Williams performed the examination as ordered by the trial court over the appellant's objection after the State moved for additional psychiatric evaluation. The appellant called Dr. Williams to testify at trial during the appellant's case-in-chief. On cross-examination, the State elicited from Dr. Williams several statements McWil-

liams made during the examination concerning his ability to understand the criminality of his actions.[1] The appellant argues that the admission of those statements violated his constitutional privilege against self-incrimination.

During his direct examination, the appellant's counsel asked Dr. Williams whether McWilliams knew that Antonek was not a government agent, and Dr. Williams responded that McWilliams stated that he "knew he [Antonek] was not the CIA."[2] Because the appellant's sole defense was insanity, Dr. Williams' testimony was potentially incriminating because it concerned criminal responsibility.[3] During its cross-examination, the State asked the following questions:

Q. And after shooting the boys, he told you he knew it was a crime, didn't he?

A. That's correct.

Q. He just came out and said: I knew it was a crime, and he ran to avoid detection?

A. Actually he said he was gonna go back to his apartment and think about it for a while. That was his exact statement.

Q. And also, when he says he knew that the police were looking, or were in the neighborhood, were watching him, then he went to get a bus ticket to leave town?

A. That is correct.

Q. Mr. Stone just pointed out to me in your report that he said to you, I think his exact words were that after the shooting he states he knew it was a crime and therefore he wanted to get away so that he would not be arrested?

A. (The witness nods in the affirmative.)

---

1. The State also used several statements McWilliams made to Dr. Williams during its closing argument.

2. Most of McWilliams' delusions centered on the government and the C.I.A. He told Dr. Williams that the government had brainwashed him while he was serving in the embassy guard. He also believed that the government had

forced him to have sex with an orangutan and that they had beheaded him and then sewed his head back into place. He claimed that the government did these things so that they could blackmail him if he ever attempted to reveal government secrets.

3. *See, e.g., State v. Samples*, 174 W.Va. 584, 328 S.E.2d 191, 194 (1985).

In *State v. Jackson*, 171 W.Va. 329, 298 S.E.2d 866 (1982), we examined a situation where, under court order, the defendant was examined by a court appointed psychiatrist to determine his competency to stand trial. We held that the psychiatrist's testimony should not contain any incriminating statements made by the defendant. However, under the facts of that case, it was the prosecution who was offering the psychiatrist as a witness and not the defense. In this case, the defendant put the psychiatrist on the stand and explored in depth the doctor's examination of Mr. McWilliams. The State's cross-examination touched the same subject matter as the defendant's direct examination and was not objected to at the time. The defendant should not now be able to complain about the cross-examination, when it was the defendant's questions on direct which opened and thoroughly explored the subject matter of the cross-examination.

█ The standard which controls the admissibility of this testimony is found in syllabus point 2 of *State v. Bowman*, 155 W.Va. 562, 184 S.E.2d 314 (1971): "An appellant or plaintiff in error will not be permitted to complain of error in the admission of evidence which he offered or elicited, and this is true even of a defendant in a criminal case." Because the appellant's counsel opened the door to the State's cross-examination by questioning Dr. Williams about the statements McWilliams made during the psychiatric examination, the appellant may not complain of error in the State's exploration on cross-examination of other statements made during the same psychiatric examination touching the same subjects as brought up by the defense.

### III.

█ The appellant's third assignment of error is that the trial court improperly instructed the jury on the disposition of the appellant if he was found not guilty by reason of insanity. The trial court gave an instruction which completely covered the procedure for hospitalization of defendants found not guilty by reason of insanity.[4] The appellant regarded the instruction as highly prejudicial and initially requested that the jury be instructed not to consider post-trial disposition.[5] When the trial court refused to give such an instruction, the appellant offered a different disposition instruction which he requested be given in lieu of the trial court's instruction.[6] The trial court refused on the ground that the offered instruction was not complete.

"In any case where the defendant relies upon the defense of insanity, the defendant is entitled to any instruction which advises the jury about the further disposition of the defendant in the event of a finding of not guilty by reason of insanity which correctly states the law." Part syl. pt. 2, *State v. Nuckolls*, 166 W.Va. 259, 273 S.E.2d 87 (1980). *Nuckolls* expressly overruled the prior rule that an instruction on the disposition of a defendant after a verdict of not guilty by reason of insanity is not proper. *See* syl. pt. 6, *State v. Grimm*, 156 W.Va. 615, 195 S.E.2d 637 (1973).[7]

---

4. The trial court's instruction was a summary of the procedures found in W.Va.Code §§ 27–6A–3 and 27–5–4 (1980).

5. The appellant's proposed instruction number 1A read as follows:

 The disposition of the defendant should you find him not guilty by reason of insanity is a matter that you need not concern yourself with in reaching your verdict. You are not to consider any possible consequences of your verdict in arriving at that verdict.

6. The appellant proposed that the following instruction be used instead of the trial court's instruction:

 The court instructs the jury that in the event the defendant is found not guilty by reason of insanity that this court may order that he be hospitalized in a mental health facility for observation and examination. You are further instructed that during such observation period procedures for civil commitment may be initiated before the court by the prosecuting attorney or any other interested party; however, in the event the defendant is not found to be insane at the time, the defendant may be released.

7. For a discussion of the propriety of this type of instruction, along with the views in other jurisdictions, see generally Comment, *The Not Guilty by Reason of Insanity Verdict: Should Juries Be Informed of its Consequences?*, 72 Ky. L.J. 207 (1983–84); Annot., 11 A.L.R.3d 737 (1967).

The law controlling the disposition of a defendant who is found not guilty by reason of insanity is found in W.Va.Code § 27–6A–3 (1980). "An instruction which attempts to explain under what circumstances a criminal defendant who has been involuntarily committed to a mental institution subsequent to a verdict of not guilty by reason of insanity may be discharged from the mental institution *must include* an adequate and accurate explanation of the law relating to commitment and discharge of involuntary patients at state mental institutions." Syl. pt. 6, *State v. Boyd,* 167 W.Va. 385, 280 S.E.2d 669 (1981) (emphasis added). *Boyd* requires that any instruction on the disposition of a defendant after a verdict of not guilty by reason of insanity include a *complete* explanation of the procedure for involuntary commitment and discharge as given in the Code.

The appellant's original proposed instruction on disposition did not correctly state the law as required by *Nuckolls;* it did not state any law. The appellant's second proposed instruction on disposition did not provide a complete explanation of all phases of the civil commitment process as required by *Boyd.* The trial court's instruction did explain the process completely. The appellant raised no specific objection to the trial court's instruction, but rather insisted upon amending his own instruction in order to make it acceptable to the trial court. A defendant is not entitled to amend his own instruction in order to bring the instruction into compliance with the law when the trial court's instruction on the issue accurately and adequately covers the procedure and when the defendant makes no specific objection to the trial court's instruction. We therefore find no error in the instruction given by the trial court on the disposition of a defendant after a verdict of not guilty by reason of insanity.

### IV.

The appellant's fourth assignment of error is that the trial court improperly quashed the subpoena of Prosecutor Thomas Newbraugh. The appellant subpoenaed Newbraugh for trial for the purpose of testifying to a statement which he made in a motion for an order of nolle prosequi in this case. The motion states as follows:

That, if the above-captioned matters were to proceed to trial, the State would be without any evidence to rebutt [sic] an insanity defense.

The appellant argues that the statement should have been treated as a judicial admission which is conclusive as to its content. We do not agree. A judicial admission is a concession made by a party for the purpose of withdrawing a particular fact from the realm of dispute. *See, e.g., Outer Banks Contractors, Inc. v. Forbes,* 302 N.C. 599, 604, 276 S.E.2d 375, 379 (1981). In order to constitute a judicial admission, the statement must be one of fact, not opinion. *See, e.g., Hedge v. Bryan,* 425 S.W.2d 866, 868 (Tex.Civ.App.1968).

The statement in question here is opinion. The State made the statement in support of a motion, not as an admission of fact. A statement made by an attorney which amounts to an opinion on the strength or weakness of a case is not relevant and is not admissible as evidence. *See DiBella v. County of Suffolk,* 574 F.Supp. 151, 154 (E.D.N.Y.1983), *aff'd.,* 762 F.2d 990 (2d Cir.1983). We therefore find no error in the trial court's decision to quash the subpoena of the prosecutor.

### V.

The appellant's fifth assignment of error is that the trial court improperly excluded evidence of the appellant's mental condition subsequent to the shootings. During direct examination, the appellant asked Dr. Patricia Williams about her opinion as to McWilliams' *competency to stand trial* after she examined him in 1982. The State objected on the ground that a defendant's competency to stand trial is not relevant to the jury. The trial court sustained the objection. The appellant now argues that the question was an attempt to elicit circumstantial evidence relating to McWilliams' mental condition at the time of the shootings.

The determination of the accused's competency to stand trial is solely for the judge and is of no concern to the jury. *State ex rel. Smith v. Scott,* 167 W.Va. 231, 280 S.E.2d 811, 814 (1981). The question the appellant asked of Dr. Williams was improper as it was phrased. However, the confusion was compounded by the trial court's ruling that the appellant would only be permitted to "elicit testimony that goes to his [McWilliams'] mental status at the time of the shooting." While the ultimate issue is the accused's mental condition at the time of the offense, evidence of the accused's mental condition either before or after the offense is admissible so far as it is relevant to the accused's mental condition at the time of the offense. *Id.,* 167 W.Va. at 235, 280 S.E.2d at 813.

We agree with the appellant that McWilliams' mental condition at the time of Dr. Williams' examination in 1982 is relevant on the issue of criminal responsibility. Expert psychiatric opinions on the issue of criminal responsibility will never be based upon examinations which took place at the time the offense was committed. Psychiatrists will not be present and available to conduct examinations at the scene of the crime. A psychiatrist can do no better than to determine the accused's mental condition at the time of the examination, which may be either before or after the time of the offense, and then to give an opinion as to whether the accused's mental condition at the time of the offense was the same or different. However, we believe that the trial court's ruling on the question as it was phrased at trial was proper.

### VI.

The appellant's primary assignment of error is that the State failed to meet its burden of proving that the appellant was sane at the time of the shootings. We agree, and we therefore reverse.

"There exists in the trial of an accused a presumption of sanity. However, should the accused offer evidence that he was insane, the presumption of sanity disappears and the burden of proof is on the prosecution to prove beyond a reasonable doubt that the defendant was sane at the time of the offense." Syl. pt. 2, *State v. Milam,* 163 W.Va. 752, 260 S.E.2d 295 (1979). In this case, the appellant presented evidence of insanity through Dr. Patricia Williams, a psychiatrist who had examined McWilliams in 1982. Dr. Williams discussed her examination of McWilliams and testified that she had diagnosed him as a paranoid schizophrenic. She described McWilliams' many delusions and the effect they had on his ability to cope with the world. Dr. Williams stated that within a degree of medical certainty, McWilliams was not sane at the time of the shootings. On cross-examination, the State elicited testimony from Dr. Williams that McWilliams had stated to her that he knew he had committed a crime.[8] However, Dr. Williams maintained that McWilliams was not sane. She noted that individuals who are not criminally responsible often insist that they knew what they were doing, while the reverse is often true for individuals who are criminally responsible.[9] The appellant also presented several lay witnesses who knew McWilliams before the shootings. They testified that he had been a normal high school student but that his behavior had become unusual after his discharge from the Marines.

The State presented no expert testimony to support McWilliams' sanity, and relied entirely upon lay testimony by witnesses who did not know McWilliams before the night of the shootings.[10] The State did present some slight evidence that McWil-

8. The admissibility of these statements is discussed in part II of this opinion.

9. For an example of this phenomenon, see *State v. Samples,* 174 W.Va. 584, 328 S.E.2d 191 (1985).

10. The State's witnesses included: the two surviving victims, whose only contact with McWil-

liams came moments before the shootings; the bartender at the club, who spoke with McWilliams briefly and who overheard a conversation between Antonek and McWilliams; a guitarist who was performing at the club, who saw McWilliams at the bar but did not speak to him; and the door person at the club, who did not remember seeing McWilliams at all.

liams had argued with Antonek inside the club and that the argument could have provoked the attack.[11]

■■■ The State had the burden to rebut the appellant's substantial evidence of insanity and to prove that McWilliams was sane at the time of the shootings beyond a reasonable doubt. The State did not meet its burden. The evidence presented in this case is similar to evidence presented in *Milam*, where we also reversed because the State failed to meet its burden of proof. In *Milam*, the State presented no lay or expert testimony to rebut the expert psychiatric testimony of insanity presented by the defendant. The defendant demonstrated that the psychiatric disability existed before the time of the offense. *Id.*, 163 W.Va. at 764, 260 S.E.2d at 302. We concluded that the State had not presented *any* proof of the defendant's sanity, and that double jeopardy principles barred retrial. *Id.*, 163 W.Va. at 765–66, 260 S.E.2d at 302–03.

We noted in *Milam*, and we continue to believe, that "it is not possible to fashion a particular rule on whether the State has failed to carry its burden of proving sanity beyond a reasonable doubt." *Id.*, 163 W.Va. at 764, 260 S.E.2d at 302. Each case will differ in the amount and type of evidence needed to meet the burden of proving sanity. In this case, the State presented only lay witnesses. Even though we conclude that their testimony was insufficient to prove sanity, we do not mean to say that lay testimony can never rebut expert testimony. "The testimony of expert witnesses on an issue is not exclusive, and does not necessarily destroy the force or credibility of other testimony." Part syl. pt. 2, *Webb v. Chesapeake and Ohio Ry.*, 105 W.Va. 555, 144 S.E. 100 (1928), *cert. denied*, 278 U.S. 646, 49 S.Ct. 82, 73 L.Ed. 559 (1928).

■■■ Lay witnesses may give an opinion about the mental condition of a criminal defendant. "When the question of mental capacity of one charged with a crime to commit it is involved, a non-expert witness may be allowed to express his opinion, where he has personal knowledge of the facts on which his opinion is based." Syl. pt. 4, *State v. Fugate*, 103 W.Va. 653, 138 S.E. 318 (1927). *See also* W.Va.R.Evid. 701. In addition, lay witnesses may testify as to facts concerning the criminal defendant's behavior, thereby providing the jury with the information needed to reach a conclusion about the defendant's mental condition. When lay witnesses testify about a person's mental condition, the following factors are to be considered: (1) the witnesses' acquaintance with the person and opportunity to observe the person's behavior;[12] (2) the time during which the observation occurred;[13] and (3) the nature of the behavior observed.[14]

In this case, none of the State's witnesses knew Timothy McWilliams before the night of the shootings. The State did not produce any witnesses, such as McWilliams' neighbors or professors, who knew him before the shootings and who could testify about his behavior. None of the State's witnesses had had a sufficient opportunity to observe McWilliams to enable them to testify about his mental condition. The State produced no evidence of any reason, other than a slight provocation, why McWilliams shot and killed a young man he barely knew, and shot and wounded two young men he did not know at all.

---

11. The only evidence of provocation was provided by Michael Carter, who testified about several statements Antonek made concerning a conversation Antonek had with McWilliams, and by the bartender at the club, who overheard the conversation.

12. *See Freeman v. Freeman*, 71 W.Va. 303, 310–11, 76 S.E. 657, 660 (1912).

13. *See Ramseyer v. Dennis*, 187 Ind. 420, 435, 119 N.E. 716, 718–19 (1917).

14. "The mere opinions of witnesses not experts are entitled to little or no regard: unless they are supported by good reasons founded on facts which warrant them: and if the reasons and facts upon which they are founded are frivolous, the opinions of such witnesses are worth but little or nothing." Syl. pt. 10, *Jarrett v. Jarrett*, 11 W.Va. 584 (1877).

"[T]he State's burden of proving sanity beyond a reasonable doubt does not mean that the sanity evidence must be entirely without contradictions." *State v. Kinney,* 169 W.Va. 217, 286 S.E.2d 398, 401 (1982). However, the case before us is not one in which a factual contradiction on the issue of sanity appears. The facts presented point conclusively to McWilliams' insanity at the time of the offense.

As a result of our decision in this case, McWilliams will be acquitted. The State will have the opportunity to initiate involuntary civil commitment proceedings against him. In those proceedings, the State will have the burden of proving by clear, cogent, and convincing evidence that McWilliams is presently mentally ill and that because of his illness he is likely to cause serious harm to himself or others if he is allowed to remain at liberty.[15] If the State fails to meet its burden, McWilliams will be a free man. We are troubled by this prospect, but no alternative exists under West Virginia law.

 Under the *Milam* rule there exists at trial a presumption of sanity unless the accused should offer evidence of insanity, in which case the State has the burden

at trial to prove a defendant *sane* beyond a reasonable doubt, just as it must prove every other element of an offense. If the State fails to meet its burden and the defendant is found not guilty by reason of insanity, the State then has the burden during the involuntary civil commitment hearing to prove that the defendant is *mentally ill* by clear, cogent, and convincing evidence. The difference in the burdens of proof creates a gap through which a defendant may pass. The State may not be able to prove either that the defendant was sane at the time of the offense beyond a reasonable doubt or that he is mentally ill at the time of the involuntary civil commitment hearing by clear, cogent, and convincing evidence. As a result, a defendant who has committed a crime may neither serve time in the penitentiary nor undergo treatment at a mental institution. It would appear that some legislation is needed to fill this gap. We note that several other jurisdictions have developed methods for dealing with this problem.[16]

For the above reasons, we reverse the jury verdict of the Circuit Court of Monongalia County and order that a judgment of acquittal be entered. This order shall be stayed for forty days to give the State the

---

**15.** W.Va.Code § 27–5–4(j) (Supp.1985).

**16.** Some states have abolished the insanity defense entirely. *See, e.g.,* Idaho Code § 18–207 (Supp.1986). We disagree with this move. Those suffering from mental illness have a right to be treated instead of punished. *See State v. Samples,* 174 W.Va. 584, 328 S.E.2d 191, 194 n. 4 (1985). Other states have developed the compromise verdict of "guilty but mentally ill." *See, e.g.,* Alaska Stat. § 12.47.030 (1984). *See generally* Fentiman, *"Guilty But Mentally Ill": The Real Verdict Is Guilty,* 26 B.C.L. Rev. 601 (1985). We believe this only muddies the water. The accused was either criminally responsible or not criminally responsible by reason of insanity.

In the recent case of *Jones v. United States,* 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), the United States Supreme Court determined the constitutionality of a District of Columbia statute which provides for automatic commitment of defendants who are found not guilty by reason of insanity. The standard of proof under the statute differs from the *Milam* rule in that the defendant must prove his insanity at trial by a preponderance of the evidence. *Id.,* 463 U.S. at 356, 103 S.Ct. at 3045, 77 L.Ed.2d

at 700, *citing* D.C.Code § 24–301(j) (1981). The Supreme Court upheld the automatic commitment procedure even though it allowed an insanity acquittee to remain committed for more than the maximum sentence he could have served had he been convicted, without requiring a separate civil commitment proceeding.

The United States Congress has also addressed the problem with the Insanity Defense Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 2057 (1984). Among other things, the Act changed the burden of proof of insanity in federal courts. Prior to the Act, the burden of proof in federal courts was the same as the current West Virginia rule. *See Davis v. United States,* 160 U.S. 469, 484, 16 S.Ct. 353, 358, 40 L.Ed. 499, 504 (1895). The Insanity Defense Reform Act made insanity an affirmative defense, and placed the burden on the defendant to prove insanity at trial by *clear and convincing evidence.* 18 U.S.C.A. § 20 (Supp.1986).

The rule relating to the burden of proof of insanity does not rise to a constitutional level. *Leland v. Oregon,* 343 U.S. 790, 797, 72 S.Ct. 1002, 1007, 96 L.Ed. 1302, 1308 (1952); *State v. Milam,* 163 W.Va. at 761, 260 S.E.2d at 300. Therefore, the legislature may change the judicially established burden of proof.

opportunity to initiate involuntary mental commitment procedures pursuant to W.Va. Code §§ 27–6A–3 and 27–5–4 (1980).

Reversed and remanded with directions.