500 S.E.2d 524

**STATE of West Virginia, Appellee,**

v.

**Betty Olivia RILEY, Appellant.**

No. 23998.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 17, 1997.

Decided Dec. 16, 1997.

Darrell V. McGraw, Jr., Attorney General, Victor S. Woods, Assistant Attorney General, Charleston, for Appellee.

Robert Wilkinson, Kimberly Campbell, Huntington, for Appellant.

PER CURIAM: [1]

Appellant Betty Olivia Riley (hereinafter "Appellant") appeals her second degree murder conviction in Cabell County, contending that she had been abused by the victim and that she should have been permitted to more fully develop the battered woman's syndrome as a defense. She also contends that several comments by the State were prejudicial, that jury instructions offered by the defense were inappropriately amended, and that her Fourth Amendment rights were violated when police officers at the scene of the murder tested her for gun powder residue without her consent. Having reviewed the record, briefs, and arguments of counsel, we conclude that the lower court committed no reversible error and affirm its decision.

## I.

### FACTS

On October 5, 1994, Jack Brown telephoned emergency services and indicated that the Appellant had shot and wounded him. When the police arrived at the Huntington, West Virginia, residence, the Appellant was lying on the floor in front of Mr. Brown, who was seated in a chair with one gunshot wound. A .25 caliber semiautomatic handgun, later determined to be the murder weapon, was found approximately one foot from the Appellant's hand. The officers informed the Appellant of her Miranda rights, and she thereafter admitted that she had shot Mr. Brown, indicating a history of domestic violence. Mr. Brown died as a result of the gunshot wound.

On May 11, 1995, the Appellant was charged with first degree murder by a single count indictment issued by the Cabell County Grand Jury. Subsequent to a March 1996 trial, the Appellant was found guilty of second degree murder and was sentenced to thirty-two years in prison. On appeal to this

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992) ("Per Curiam opinions ... are used to decide only the specific case before the Court; everything in a *per curiam* opinion beyond the syllabus point is merely *obiter dicta* .... Other courts, such as many of the United States Circuit Court of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.")

Court, the Appellant identifies four specific issues of alleged error, and asserts that the evidence was insufficient to support the verdict. The Appellant's assignments of error include: refusal of the lower court to allow the Appellant to fully develop testimony and evidence concerning the battered spouse syndrome; prejudice created by remarks made by the assistant prosecuting attorney, amendment of the Appellant's jury instructions on the procedures and consequences of a not guilty by reason of insanity verdict; Fourth Amendment violation based upon the failure of the police officers to obtain the Appellant's consent to gun powder residue testing; and evidence insufficient to support the verdict.[2]

## II.

### EVIDENCE OF BATTERED SPOUSE SYNDROME

■ Based upon our review of the transcript, we find that the Appellant's opportunity to introduce battered woman's syndrome testimony, including instances of prior abuse, was not unreasonably or erroneously limited.

### A.

*Testimony Actually Introduced*

At trial, the Appellant testified regarding the history of abuse, and informed the jury that shortly before the shooting, Mr. Brown had slapped her in the face while they were standing on the porch of their apartment. The Appellant also testified that after she had gone inside to lie down with her cat, Mr. Brown entered the room and repeatedly threw the cat across the room. Testimony was also introduced concerning the Appellant's initial statements immediately after the police arrived at the scene. The Appellant

stated, "I'm tired of him beating me," and she repeatedly said, "domestic abuse, domestic abuse." She told the police, "I don't know how many times that I shot, I was just tired—wanted him to stop hitting me."

The Appellant also testified that she had experienced psychiatric problems since a 1961 suicide attempt. She testified that Mr. Brown was "nasty" and resorted to verbal abuse "so bad you would be afraid that he might use his fist on you." While she characterized the abuse as "infrequent," she did relate an incident in which Mr. Brown had thrown a knife into the wall near her head, "close enough that it bothered me."

The Appellant's treating psychiatrist from 1993 to 1994, Dr. Jack Dodd, testified that the Appellant suffered bipolar disorder, is alcohol dependent, and has been hospitalized on at least three occasions for treatment of her mental illness. A psychologist employed by Dr. Dodd, Ms. Maria Stallo–Leppla, testified that Mr. Brown's action in throwing the cat across could have prompted a psychotic episode in the Appellant.

Dr. Joseph Wyatt, the Appellant's expert psychologist, also diagnosed the Appellant as suffering from bipolar disorder and opined that "it was more likely than not that she could not conform her actions to the requirements of the law ..." because of the psychotic episode at the time of the shooting. Dr. Wyatt also testified regarding the Appellant's history of mental illness, and instances of physical and emotional abuse. Dr. Wyatt characterized the Appellant as "a classic battered spouse," explaining that she had been abused by Mr. Brown and her former husband of twenty-nine years.[3]

In addition to the evidence summarized above, the Appellant also sought to introduce further evidence regarding the nature of prior abusive behavior. That evidence, if ruled

2. The lower court found no evidence of self-defense and refused to give an instruction regarding self-defense. The Appellant does not assign error to the lower court's refusal to give a self-defense instruction, and she has therefore abandoned this potential assignment of error. *See State v. LaRock*, 196 W.Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are not raised ... are not considered on appeal.").

3. Dr. Wyatt also explained that "a battered spouse syndrome is a cluster of types of thinking and feeling and acting by women, 99.9 percent of the time, in which they repeatedly get into bad relationships." Dr. Wyatt testified that such women "feel unable to break free from that abuse."

admissible, would have consisted of testimony by four individuals: Mr. William Congleton, regarding an incident wherein Mr. Brown allegedly brandished a gun upon Mr. Congleton; Officer Tim Goheen, the officer investigating that allegation; Mr. Mark Dillon, the Appellant's son-in law, regarding the prior abuse; and Mrs. Donna Dillon, the Appellant's daughter, regarding her mother's relationship with her late father. The Appellant also asserts that the testimony of Dr. Wyatt was improperly limited.

### B.

#### Donna and Mark Dillon

The lower court refused to admit the testimony of Mrs. Donna Dillon regarding the abuse suffered by the Appellant at the hands of her former husband, Mrs. Dillon's father, because this testimony would have been cumulative. The Appellant and her experts had already presented testimony regarding this abuse. With regard to Mr. Mark Dillon, the Appellant's son-in-law, the Appellant attempted to introduce testimony of Mr. Dillon regarding instances in which the Appellant had contacted Mr. Dillon requesting assistance. The lower court never ruled on the admissibility of Mr. Dillon's testimony; the court simply sustained the prosecution's objection when hearsay evidence regarding statements allegedly made by the Appellant to Mr. Dillon began to emerge. Subsequent to the lower court's decision to sustain the objection, Appellant's counsel abandoned that particular line of questioning.[4]

### C.

#### Mr. William Congleton and Officer Tim Goheen

■ With regard to Mr. Congleton and Officer Tim Goheen's testimony concerning

the brandishing incident, we have only required the admission of offered evidence of violent acts against third parties where self-defense is relied upon "and there is evidence showing or tending to show, that the deceased was at the time of the killing, making a murderous attack upon the defendant." Syl. Pt. 2, in part, *State v. Louk*, 171 W.Va. 639, 301 S.E.2d 596 (1983). In syllabus point one of *State v. Collins*, 154 W.Va. 771, 180 S.E.2d 54 (1971), this Court held:

> When in a prosecution for murder the defendant relies upon self-defense to excuse the homicide and the evidence does not show or tend to show that the defendant was acting in self-defense when he shot and killed the deceased, the defendant will not be permitted to prove that the deceased was of dangerous, violent and quarrelsome character or reputation.

*See State v. Smith*, 198 W.Va. 441, 481 S.E.2d 747 (1996).

### D.

#### Dr. Joseph Wyatt

■ The Appellant also contends that the testimony of Dr. Wyatt regarding the battered woman's syndrome and the relevant underlying facts from within the Appellant's history of abuse was improperly limited. We have consistently held that an expert is permitted to explain in detail the factual basis for his opinion. *State v. Duell*, 175 W.Va. 233, 332 S.E.2d 246 (1985). As the questioning of Dr. Wyatt began to encompass particular instances of abuse, the prosecution raised the concern that such hearsay evidence should be admissible only for a limited purpose. The lower court sustained the

---

4. The exchange ensued as follows:

Mr. Dillon: "Well, when I got to the apartment, Ms. Riley opened the door of the apartment to let me in and she was in a very nervous, upset state. Kind of crying. And I told her I—you know, that Donna had called me and I had come to take her home, take her back to their apartment. And she stated to me that—oh, she stated to me that Mr. Brown had wanted—"

Mr. Martorella: "Objection."

The Court: "You may state what you saw and observed. The objection is sustained. Not what

has been told to you except as a preliminary matter."

After a bench conference, Appellant's counsel stated: "I'll ask a couple more questions to clear it up. I think we can change the nature of how it's offered."

Appellant's counsel then proceeded to elicit information from Mr. Dillon regarding taking the Appellant away from that apartment, without revealing any specific comments made by the Appellant regarding the underlying domestic disturbance.

**714**

prosecution's objection,[5] and Dr. Wyatt subsequently testified concerning the general nature of the comments by the Appellant regarding her relationship with Mr. Brown. Thus, the lower court did not preclude Dr. Wyatt from testifying regarding the factual underpinnings of his conclusions. The court simply noted that any hearsay evidence which was encompassed therein was being introduced only for the limited purpose of allowing Dr. Wyatt to educate the jury regarding the foundations for his medical conclusions. This same type of exchange transpired regarding medical records, and the lower court noted that such hearsay evidence could not be used as direct evidence of Mr. Brown's abusive behavior, but could be used to build the foundation for Dr. Wyatt's conclusions.

We have consistently maintained that rulings on the admissibility of evidence are largely within the sound discretion of a trial court. In syllabus point two of State v. Franklin, 191 W.Va. 727, 448 S.E.2d 158 (1994), we explained:

" 'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus Point 10, State v. Huffman, 141 W.Va. 55, 87 S.E.2d 541 (1955)." Syl. pt. 4, State v. Ashcraft, 172 W.Va. 640, 309 S.E.2d 600 (1983).

"[E]videntiary decisions of a trial court are entitled to substantial deference." McDougal v. McCammon, 193 W.Va. 229, 235 n. 5, 455 S.E.2d 788, 794 n. 5 (1995)

We have previously permitted introduction of evidence regarding the battered

spouse syndrome, and the lower court in the present case admitted substantial evidence on this issue offered by the Appellant. In syllabus point five of State v. Steele, 178 W.Va. 330, 359 S.E.2d 558 (1987), for instance, we held that "[e]xpert testimony can be utilized to explain the psychological basis for the battered woman's syndrome and to offer an opinion that the defendant meets the requisite profile of the syndrome." [6] Conferring the right of introduction of evidence upon a defendant, however, does not translate into authority to engage in an unlimited foray into the issue. The court still possesses the right to limit the testimony; when it becomes duplicative, the court may refuse to accept additional witnesses. Rule 403 of the West Virginia Rules of Evidence provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

See State v. Ludwick, 197 W.Va. 70, 475 S.E.2d 70 (1996); State v. Brown, 179 W.Va. 681, 371 S.E.2d 609 (1988).

The lower court in the present case exercised its right to limit testimony in that manner. We find no clear error in the lower court's decisions regarding admissibility of evidence, and we therefore affirm those decisions.

## III.

### REMARKS OF PROSECUTION

The Appellant contends that she was prejudiced by certain remarks of the prosecution. A prosecutorial reference to the ab-

**5.** The Appellant had composed a history of her life with the decedent. The lower court ruled that although Dr. Wyatt could use the history as a basis for his conclusions, the history was "not admissible into evidence otherwise being—would not be admissible straight in as evidence."

**6.** Evidence of battered spouse syndrome has been found to be admissible for a criminal defendant in West Virginia for any of three purposes. First, it can be used to determine the defendant's mental state where self-defense is asserted. See State v. Dozier, 163 W.Va. 192, 197–98, 255 S.E.2d 552, 555 (1979). Second, it can be used

to negate criminal intent. See State v. Lambert, 173 W.Va. 60, 63–64, 312 S.E.2d 31, 35 (1984). Finally, in State v. Wyatt, 198 W.Va. 530, 482 S.E.2d 147 (1996), we discussed the potential use of the battered spouse syndrome "to establish either the lack of malice, intention, or awareness, and thus negate or tend to negate a necessary element of one or the other offenses charged." Id. at 542, 482 S.E.2d at 147, 159. The discussion in Wyatt, however, was rather cryptic, and was neither expounded upon nor elevated to the syllabus.

sence of physical symptoms to indicate that Mr. Brown had hurt the Appellant and comments regarding whether the Appellant drank beer the day of the incident were not objected to at trial. The Appellant now asserts that this Court could utilize the plain error doctrine to correct errors to which no objections were made, we do not find that the use of the plain error doctrine is justified in this case.

We addressed the issue of absence of objection in *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996), and observed the following:

> Ordinarily, a defendant who has not proffered a particular claim or defense in the trial court may not unveil it on appeal. Indeed, if any principle is settled in this jurisdiction, it is that, absent the most extraordinary circumstances, legal theories not raised properly in the lower court cannot be broached for the first time on appeal. We have invoked this principle with a near religious fervor.

*Id.* at 597, 476 S.E.2d at 544. "Exceptions must be few and far between and, therefore, an appellate court's discretion should not be affirmatively exercised unless the equities heavily preponderate in favor of such a step. These principles are embodied in our 'plain error' rules." *Id.* at 598, 476 S.E.2d at 545 (Footnote omitted.)

Moreover, we see nothing improper about the prosecutor's reference to evidence which had been introduced at trial regarding the absence of physical signs of abuse [7] and to the issue of whether the Appellant had been drinking on the day of the murder. Both issues had been dealt with at trial, and evidence regarding those matters had been submitted to the jury.

██ In addition to the comments which received no objection at trial, the Appellant also alleges that she was prejudiced by the prosecutor's remark that "forty days is not a punishment," referring to the possible consequences of a not guilty by reason of insanity verdict. The Appellant's attorney objected, and the lower court informed the prosecutor that he was not permitted to address the length or duration of a punishment, except as contained in the court's charge on first degree murder. Appellant's counsel did not request that the jury be admonished to disregard the remark.

The Appellant also alleges that she was prejudiced by prosecutorial characterization of the insanity defense as potentially a "license to kill." The prosecution argues that such comment was intended only to stress the absence of any convincing evidence that the Appellant had lapsed into a psychosis prior to shooting Mr. Brown. A similar comment, "if 40 million people are battered and we send out a message that this is a defense," is also raised as prejudicial. Objections to these comments were overruled.

██ In syllabus point five of *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995), we explained that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice." Syllabus point six elaborates as follows:

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately

---

7. The evidence at trial indicated that none of the arresting officers discerned any physical signs of abuse at the time of the murder. A police records clerk who had examined the Appellant on the day of the murder testified that she found no cuts or bruises on the Appellant. The Appellant introduced the testimony of Dr. Susan Apgar indicating that Dr. Apgar had noticed bruises on the Appellant's upper right thigh and on her lower left extremity on October 15, 1994, ten days after the murder. The prosecution attempted to discount that evidence by emphasizing the ten day passage of time between the murder and the moment at which these two bruises were documented by a physician. The evidence also indicated that these bruises could be only seven days old.

placed before the jury to divert attention to extraneous matters.

Upon our evaluation of the allegedly improper remarks by the prosecution and the effect of those remarks upon the jury, we find that the comments do not warrant reversal. We do not believe that the remarks "clearly prejudice[d] the accused or result[ed] in manifest injustice."

## IV.

### ALLEGED INSTRUCTIONAL ERROR

▮▮▮ The Appellant also asserts that the trial court inappropriately modified Appellant's instructions number eleven and twenty, both regarding the consequences of a verdict of not guilty by reason of mental illness, pursuant to West Virginia Code § 27–6A–3 (1992).[8] The instructions attempted to inform the jury of the length of the court's jurisdiction over a defendant if found not guilty by reason of insanity and the maximum period of incarceration. Syllabus point two of *State v. Nuckolls,* 166 W.Va. 259, 273 S.E.2d 87 (1980), provides that a defendant relying upon the defense of insanity is entitled to such instruction:

In any case where the defendant relies upon the defense of insanity, the defendant is entitled to any instruction which advises the jury about the further disposition of the defendant in the event of a finding of not guilty by reason of insanity which correctly states the law; however, when the court gives an instruction on this subject which correctly states the law and to which the defendant does not object, the defendant may not later assign such instruction as error.

The difficulty in determining the appropriate instruction at trial apparently emanated from the fact that West Virginia Code § 27–6A–3 was amended in 1995. The Appellant apparently encountered difficulty in determining whether the 1995 amendments or the prior version of the statute applied to the Appellant's case. In *State v. Smith,* 198 W.Va. 702, 482 S.E.2d 687 (1996), we addressed the applicability of the 1995 amendments to section 27–6A–3 to a case in which the alleged illegal act had occurred prior to the 1995 amendments. *Id.* at 707–708, 482 S.E.2d at 692–93. We held that ex post facto principles preventing the application of a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused were not violated by the application of the 1995 version. *Id.* at 714, 482 S.E.2d at 699. In *Smith,* we found that it was the time of acquittal, finding the defendant not guilty by reason of mental illness, that determined the applicability of the statute, rather than the time of the commission of the illegal act. *Id.* at 713, 482 S.E.2d at 698.

In the present case, the Appellant determined, incorrectly under the *Smith* decision,[9] that reliance should be placed upon the former version of the statute. Appellant's counsel then specifically requested alterations to instruction eleven, deleting language based upon the 1995 version. Instruction twenty, also setting forth the involuntary commitment information, was amended by the lower court in an attempt to conform the instruction to the 1995 version of the statute.

The lower court could have alleviated the uncertainty surrounding these instructions by specifying which of the two versions of the

**8.** West Virginia Code § 27–6A–3 (1995), provides as follows:

Court jurisdiction over persons found not guilty by reason of mental illness, mental retardation or addiction

(a) After the entry of a judgment of not guilty by reason of mental illness, mental retardation or addiction, the court of record shall determine on the record the offense of which the person otherwise would have been convicted, and the maximum sentence he could have received. The court shall commit such defendant to a mental health facility under the jurisdiction of the de-

partment of health, with the court retaining jurisdiction over the defendant for the maximum sentence period.

(b) If the defendant is released from an inpatient mental health facility while under the jurisdiction of the court, the court may impose such conditions as are necessary to protect the safety of the public.

**9.** We recognize that difficulty facing counsel in determining the applicable statute. *Smith* was not decided until subsequent to the determinations which were made in this case.

statute would be applied to the Appellant's case. As it transpired, however, the instructions were ultimately provided to the jury explaining the general nature of the commitment proceedings and properly conveying information in the context of the 1995 version. We find no error in the lower court's attempt to render the instructions consistent with the law. The Appellant requested the alteration of instruction eleven, and the court properly altered instruction twenty to comport with the statutory guidance provided in the 1995 version of the statute. We therefore affirm the decision of the lower court regarding the instructional issue.

## V.

### FOURTH AMENDMENT ISSUES

■ The Appellant contends that she was subjected to an unreasonable search when police swabbed her hands and face for traces of gunpowder residue. The police did not have a warrant, and the Appellant, through motion in limine, sought suppression of evidence of gunshot residue found on her hands and face based upon the failure of the police to obtain either a warrant or the Appellant's knowing and intelligent consent. During a hearing on the motion to suppress, Detective Gene Hollingsworth testified that the Appellant was advised of her Miranda rights following arrest and that the Appellant appeared to understand everything that was explained to her. The Appellant informed the police that she would not give a statement without an attorney. Approximately ten minutes later, the Appellant's hands and face were swabbed for gunpowder residue. No attempt was made to obtain her consent. Lieutenant Samuel Scheidler testified that "gunshot residue is very tenable." He continued as follows: .

It's very perishable, can actually fall off the hands, face. And without taking it in a timely manner, it can actually fall off by itself without the act of wiping, although that would speed the process up. And it's actually (sic) to collect it as soon as possible after the act of firing a weapon to save it.

The lower court denied the Appellant's motion to suppress, ruling that the State had demonstrated sufficient circumstances to justify the taking of the evidence without a warrant.

This ruling is consistent with the general recognition that superficial examination of a lawfully arrested individual for evidence of gunpowder residue is not violative of the Fourth Amendment prohibition against unreasonable searches and seizures. In *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973), the United States Supreme Court upheld the taking of fingernail scrapings from a murder suspect where police had noted possible blood stains on the hand and had otherwise established probable cause to arrest.

> [C]onsidering the existence of probable cause, the very limited intrusion undertaken incident to the stationhouse detention, and the ready destructibility of the evidence, we cannot say that this search violated the Fourth and Fourteenth Amendments.

*Id.* at 296, 93 S.Ct. at 2004.[10]

We agree with the decision of the lower court to permit the introduction of evidence obtained as a result of the swabbing for gunpowder residue, and we therefore affirm that decision.[11]

---

**10.** *See State v. Kyger,* 787 S.W.2d 13 (Tenn.Crim. App.1989) (permitting gathering of physical evidence from person arrested with probable cause, including handswabs, fingerprints, and photographs admissible as evidence legally obtained incident to arrest); *Strickland v. State,* 247 Ga. 219, 275 S.E.2d 29, *cert. denied* 454 U.S. 882, 102 S.Ct. 365, 70 L.Ed.2d 192 (1981) (permitting swabbing of hands for gunshot residue); *State v. Parsons,* 513 S.W.2d 430 (Mo.1974) (permitting warrantless swabbing where officers knew that microscopic particles of dynamite would vanish within one to two days or as a result of defendant washing his hands.)

**11.** We also note that the Appellant relied upon the battered woman's syndrome and other evidence of mental incapacity and upon self-defense as a defense at trial. She never forwarded the contention that she was not the person who fired the weapon. Thus, the gun powder residue evidence was in no way inconsistent with her position at trial.

## VI.

## ALLEGATION THAT VERDICT IS CONTRARY TO THE WEIGHT OF THE EVIDENCE

■ The Appellant asserts that the verdict of guilty of second-degree murder is contrary to the weight of the evidence. The Appellant appears to believe that her introduction of evidence regarding her mental illness and evidence regarding the battered spouse syndrome should have combined to prohibit of verdict of guilty on the second-degree murder charge.

The Appellant made a valiant effort to convince the jury that her mental trauma rendered her incapable of conforming her actions to the requirements of the law. However, the State presented evidence, through the testimony of Dr. Ralph Smith, an expert in forensic psychiatry, that the Appellant may have "some exaggeration of symptoms and problems." Although Dr. Smith diagnosed the Appellant as suffering from major depression, as well as dependent personality disorder, he rejected to notion that she displayed symptoms of battered spouse syndrome and dispelled the suggestion that she was psychotic when she shot Mr. Brown.

■ In syllabus point three of *State v. Williams*, 198 W.Va. 274, 480 S.E.2d 162 (1996), we specified:

"A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

When viewing the evidence in the manner mandated above, we find that the jury could have discounted the testimony of the Appellant and her witnesses and could have concluded beyond a reasonable doubt that the Appellant was sane when she shot Mr. Brown.

## VII.

## CONCLUSION

Based upon the foregoing, the examination of the record, and arguments of counsel, we affirm the decision of the lower court.

Affirmed.