# CHARLESTON.

STATE *v.* GILBERT BROWN

(No. 6271)

Submitted February 19, 1929. Decided February 26, 1929.

*R. Shirley Taylor,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

The defendant, Gilbert Brown, prosecutes this writ from a judgment to serve seventy days in jail and to pay a fine of $150.00, upon his conviction on a charge of possessing moonshine liquor.

About four o'clock in the afternoon of August 9, 1927, state police searched a four-story building on Richwood Avenue in Morgantown, and found on the second floor 75 gallons of moonshine liquor in and on the floor beside an old unused automobile.

The only means of access to the building was by individual ramps leading to each floor from the outside. There was also an open inside stairway leading from the third to the fourth floor. On the day of the search, the ramp door on the second floor was padlocked, and to gain entry to that part of the building the officers proceeded to the third floor where defendant was operating an automobile repair shop, lifted a housing from a hole one and one-half feet square cut in the floor, and descended a ladder to the floor below. None of the keys found in defendant's possession opened the padlock on the second floor door.

At the time of the search, the first floor of the building was untenanted, but the fourth was occupied by an automobile sales agency. The second floor had been vacant for some time prior to April, 1927, when, according to defendant, he, as rental agent in charge of the building, leased that part to a man by the name of Walter Ross to be utilized by him in storing used cars. Ross paid the rent for April, put in appearance at the premises for a few days, and then disappeared. No one saw him except the defendant, although one of the sales agents on the fourth floor testified that he had seen cars drive up the second floor ramp at night. (The defendant customarily ceased work at five o'clock in the afternoon). The accused testified that he had no key to the padlock, which had been placed on the door by Ross.

There was a furnace in a partitioned space on the second floor, and during the winter months, men from the sales agency had on various occasions gone to that floor to tend it. The furnace coal was delivered to the third floor and was thence conveyed by means of a coal chute to the floor below. At least six persons who were storing their cars with the defendant had keys to the third floor ramp door. The defendant denied having any knowledge of the presence of the moonshine liquor. A number of defendant's witnesses testified as to his previous good character. This is substantially all the evidence bearing upon the case.

The defendant assigns as error the refusal of the court to strike out the evidence procured by means of the allegedly void search warrant. It is argued that the warrant was defective because it did not contain a sufficient description of the place to be searched. The property was described as, "that certain four-story brick building and premises located on Richwood Avenue in the city of Morgantown in Monongalia county, West Virginia." It appears from the evidence that there was no other four-story building on Richwood Avenue. The contention of the defendant is untenable. "The prevailing rule is that the place to be searched is sufficiently described if the officer to whom the warrant is directed is able to locate it with certainty." *State* v. *John,* 103 W. Va. 148, 152. See, also, *State* v. *McKeen,* 100 W. Va. 476.

Defendant further assigns as error the refusal of the trial court to give the following instruction:

["The Court instructs the jury that an innocent man may, through *malace* or otherwise, be charged with crime, and his life or *liability* be endangered by fallacious circumstances or perjury, and he may be able to produce no evidence to prove his innocence, except his oath, and if in such case a blameless life and an unstained character are of no avail—and only a mere make-weight—his condition is a sad one.] The jury are therefore instructed that evidence of good character is a substantial fact, like any other, tending to establish the innocence of the defendant, and if the jury believe that the evidence of good character of the defendant as proven in this case is sufficient to raise a good and reasonable doubt as to his guilt, when considered with all the other evidence in the case, they then should acquit the prisoner."

That part of the instruction enclosed by brackets, which might be termed a preamble, was clearly improper, because argumentative, and for other reasons that might be stated. It is contended by the State that the instruction is also erroneous because it assumes that the good character of the defendant has been proven. It would have been better to have used the words *as testified to* instead of the phrase "as proven"; but the ordinary juror does sense the difference between evidence and proof, and the words are often used in common parlance as having the same meaning. The jury could not have been misled, for the substance of the instruction was that if they believed from the evidence that defendant was of good character they should consider that fact in passing upon his guilt or innocence. Besides, the evidence as to his previous good character was uncontradicted. The instruction on good character approved in *State* v. *Morrison*, 49 W. Va. 210, 218, correctly states the law on this subject. But, granting that the court was justified in refusing the instruction as tendered, yet we believe that under the circumstances of this case, the court erred in not modifying and giving it in corrected form.

We are not unmindful of the rule enunciated in *State* v. *Siers*, 103 W. Va. 30, and *State* v. *Caddle*, 35 W. Va. 80, in which latter case this court said that it is the general practice for instructions to be prepared and asked for in important cases and that the court is not bound to take each improper instruction and so remodel it so as to make good law nor in lieu thereof to instruct generally on the law of the case. However, there is a well recognized exception to that rule. Where, in a criminal case, an instruction by a defendant is not in proper form, but pertains materially to the issue involved in the case, under the evidence introduced, and where it is apparent, by reason of the peculiar circumstances of the particular case that the refusal of such an instruction would greatly prejudice the rights of the defendant and possibly defeat the ends of justice, the duty is imposed upon the court to give a correct instruction, if he has not otherwise instructed upon that matter. *Thomas* v. *State*, (Okla.), 164 Pac. 995, 998; *People* v. *Tapia*, (Cal.), 63 Pac. 1001; *Karnes* v. *State*, (Neb.), 196 N. W. 676; *State* v. *Baene*, (Iowa), 196 N. W. 89; *Nelson* v. *Commonwealth*, (Va.), 130 S. E. 389, 392.

In the instant case the evidence is entirely circumstantial and is of such a nature as to make it a close question whether or not it justified a verdict of guilt beyond a reasonable doubt, as was demonstrated by the failure of the jury to agree on defendant's first trial for the same offense. The defendant had introduced evidence of his previous good character, which was uncontradicted, and it is not difficult to see, under these circumstances, how important a part the previous good character of the accused, almost his sole reliance, might have played in weighing the evidence of his guilt, and how greatly he may have been prejudiced by the failure to instruct on this point so vital to his defense. Good character is an important fact with every man; especially when he is on trial charged with an offense rendered improbable by a uniform course of life wholly inconsistent with any such crime. *People* v. *Garbutt*, 17 Mich. 9.

In *People* v. *Tapia, supra,* it was said: "A court is not always called upon to instruct on a point when not asked to do so, and ordinarily counsel cannot complain of the refusal

of an instruction which is not perfectly correct; but on a trial for murder, where a man's life or liberty is at stake, and with such a condition of evidence as is here exhibited, a court is not justified in refusing to instruct at all upon the paramount and vital questions in the case, simply because a particular form of instruction asked for by counsel may be safely refused.'' The penal code in that state required the court to charge ''on any point pertinent to the issue if requested by either party.'' In *State* v. *Baene, supra,* the defendant was prosecuted for statutory rape. The court held that as it was obvious that the prosecutrix had testified falsely as to her chastity and the paternity of her child, a requested instruction telling the jury that they might disregard her testimony, though faulty in structure, imposed upon the court the duty of giving a correct instruction covering this phase of the case, especially in view of the fact that the defendant had put his character in issue and it was made to appear by undisputed evidence that he has always borne a good reputation previous to the offense charged. *Nelson* v. *Commonwealth,* (Va.), *supra,* was a prosecution for involuntary manslaughter. The trial court refused to give an instruction presenting the accused's theory of the case, because the instruction tendered was erroneous in its conclusion. Judge Burks, speaking for the court, said: ''The case stated in the instruction * * * is abundantly supported by evidence introduced in this case, and the only error in it was in the conclusion which gave the opinion of the court upon the evidence and took away from the jury the question of the weight to be given the evidence. This was error, but the point was a vital one to the defendant and it was not sufficient for the court simply to have refused the instruction instead of correcting it and giving it in the proper form. While, as a rule, the trial court is not bound to correct or amend an erroneous instruction, yet under the facts of this case, it was error to have refused to instruct on this materially vital point in the case.''

We believe that under the peculiar circumstances of the instant case, it will best subserve the interests of justice to hold that the failure of the trial court to correct and modify

the requested instruction was prejudicial error, calling for reversal. In view of this conclusion, it becomes unnecessary to consider the other points of error assigned.

The judgment of the lower court will be reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed and new trial awarded.*