CHARLES GOOD v. COMMONWEALTH.

September 12, 1930.

Absent, Holt and Epes, JJ.

*W. S. Cox,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

CAMPBELL, J., delivered the opinion of the court.

This case comes before us upon a writ of error to a judgment of the Circuit Court of Scott county.

In March, 1929, a warrant was issued for plaintiff in error, by a justice of the peace, upon complaint and in-

formation of H. M. Carter, game warden of the county. The warrant charged that Charles Good "did unlawfully, knowingly and wilfully cast sawdust in J. H. Wolfe branch, a water course above tidewater, the same carrying dust into the waters of Clinch river, a water course in this State above tidewater, by which fish may be thus destroyed."

Plaintiff in error was convicted by the magistrate and a fine of five dollars was imposed upon him. Upon an appeal to the circuit court, the case was tried by a jury and Good was again convicted and fined five dollars. The trial court, over the objection of the accused, entered judgment in accordance with the verdict of the jury. There is no dispute as to the facts which may be summarized thus: Good, the owner and operator of a sawmill, was engaged at the time of the alleged offense in manufacturing lumber upon the lands of J. H. Wolfe. The mill was so located that a large quantity of the sawdust fell into a branch that emptied into Clinch river. Two doctors, testifying for the Commonwealth, stated that in their opinion sawdust, if placed in a stream in sufficient quantity, would destroy fish. The defendant testified that he had operated a saw mill for many years; that he did not observe any destruction of fish; nor had he ever observed any harmful results upon fish following the placing of sawdust in a stream. A number of witnesses, testifying for the defendant, stated that sawdust would neither kill nor injure fish.

The trial court, over the objection of plaintiff in error, instructed the jury as follows:

"The court instructs the jury that if they believe from the evidence in this case beyond all reasonable doubt that the defendant, Charles Good, knowingly and wilfully cast any sawdust into any of the water courses of this State above tidewater by which fish therein or fish spawn may be destroyed, then, the jury will find the defendant guilty

and fix his punishment by a fine of not less than $5.00 nor more than $200.00.''

Counter instructions offered by counsel for accused, and refused by the court, are as follows:

"The court instructs the jury that to constitute the offense charged in the warrant in this case, the defendant must have known, or must have had reasonable grounds to have known, that sawdust would destroy fish or fish spawn. And the court further instructs the jury the Commonwealth must prove beyond all reasonable doubt that the defendant, knowing the dangerous effect of sawdust on fish, cast it in the stream under such circumstances as were reasonably calculated to destroy fish or fish spawn.

"The court further instructs the jury that merely to place or to put sawdust in a stream in the regular and usual method of operating a sawmill is not a violation of the law.''

While accused, by counsel, alleges several grounds of error, they all concern the constitutionality and construction of subsection 4 of section 3195 of the Code of 1919, as amended by the Acts of 1928, page 1009, chapter 391, which reads thus:

"Fourth. Prohibition against use of substances injurious to fish. To use fishberries, lime, or giant powder, or any other substance for the destruction of fish, or knowingly or wilfully cast any sawdust, noxious substance or other matter into any water course of this State above tidewater, by which fish therein or spawn may be destroyed, or to place or to allow to pass into the water courses of the State, any lime, gas, tar, or refuse of gas works, injurious to fish.''

■■ The constitutionality of subsection 4 is assailed on the ground that it is not embraced in the title to the act, as required by section 52 of the Constitution, which provides in part: "No law shall embrace more than one object, which shall be expressed in its title.'' The heading

to the section in the Code of 1919, as it was in the Code of 1887, is "Unlawful Fishing." While it must be conceded that a more logical arrangement would have omitted subsection 4 from section 3195 and have placed it at some other place in the Code, we are unable to concur in the contention that the inclusion of the subsection in section 3195 renders the section unconstitutional. It is to be observed that we are not called upon to construe an independent act of the General Assembly, but a section of the Code. The rule of construction is not the same. In determining whether an independent act is obnoxious to the Constitution we must look to the title, as well as to the body of the act, to ascertain if more than one object is embraced in its provisions. In construing a section of the Code we are not concerned with the heading of the section, as it is purely a matter of informative convenience and in no sense a part of the provisions of the section. If the section construed is germane to the title of the chapter of the Code dealing with the subject, that sufficeth, as the Code is one act and is to be construed as a whole.

██ In *Brown's Case*, 91 Va. 774, 21 S. E. 357, 361, 28 L. R. A. 110, Judge Riely, dealing with a similar contention, said:

"* * * The laws contained in the present Code were enacted before, and the great body of them very long before, they were incorporated into it. They were taken from previous Codes and compilations of the general laws, and from statutes passed subsequent to such Codes and compilations. It is to be presumed that they were constitutionally enacted as well as to the title as in other respects. They were collated, revised and digested under appropriate titles and chapters, and divided into sections in pursuance of an act of the legislature, and then passed by it as one act under a proper title with the object of the act therein duly expressed: 'An act to revise, arrange and

consolidate into a Code the general statutes of the Commonwealth, approved May 16, 1887,' in strict compliance with the Constitution.

"It was not to amendments of general statutes thus consolidated into a Code that section 15 of Article V of the Constitution was intended to apply, but it was aimed at the separate acts in their original enactment, when the opportunity existed for the evils and the mischief to be done, which the constitutional provision was designed to prevent or defeat. It is not necessary, therefore, to do more, if so much, in amending and re-enacting or repealing any part of the Code or adding thereto, than refer to the proper chapter and section thereof to be amended or repealed or added to, and adopt and express in the title of the amendatory act the number and subject of such chapter, if the provision of such amendment by re-enactment or by additional section or sections is germane to the subject of the chapter."

█ In 25 R. C. L., page 867, the general doctrine is stated thus:

"It has generally been held that Codes and compiled or revised statutes intended to express either the whole of the general laws of a State, or of some great subdivision of such laws, may be adopted by one act under a general title without violating a constitutional provision prohibiting the enactment of any bill containing more than one subject and requiring that subject to be expressed in the title. The large number of related or cognate matters often treated of under some comprehensible title, such as 'Criminal Code,' 'Penal Code,' 'Code of Civil Procedure,' 'Private Corporations,' 'Railroad Corporations,' and the like, are familiar illustrations of what may be legitimately included in one act. Any construction of these constitutional provisions that would interfere with the very commendable policy of incorporating the entire body of statutory law on

one general subject in a single act, instead of dividing it into a number of separate acts, would not only be contrary to its spirit but also seriously embarrassing to honest legislation. All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject. Even though an act as originally adopted is open to the objection that it refers to more than one subject or contains matter different from what is expressed in the title, the objection may be obviated by the subsequent adoption of the law as a part of a Code."

There is no merit in the assignment of error.

 The next question is: Did the trial court, in giving the instruction complained of and in refusing the instruction offered by the accused, correctly construe the statute? We are of opinion that it did. Whether or not the sawdust was placed in the stream with the specific intention of destroying fish, or fish spawn, is immaterial. It is also immaterial whether fish were killed. The gist of the offense is knowingly or wilfully casting sawdust into a water course above tidewater, by which fish or fish spawn may be destroyed. That it was the conclusion of the law-making body that the casting of sawdust into a water course was injurious to fish and fish spawn is self-evident. If it had been the purpose of the legislature to make the offense solely dependent upon intention to kill fish, it would not have employed the words "knowingly or wilfully." The word "knowingly" is equivalent to the word "wilfully." *Fry* v. *Hubner*, 35 Ore. 184, 57 Pac. 420.

In 5 Words and Phrases, page 3939, this is said:

"The term 'knowingly' imports a knowledge that the facts exist which constitute the act or omission a crime, and does not require knowledge of the unlawfulness of the act or omission. Gen. St. Minn. 1894, section 6842, subdivision 4; Pen. Code N. Y. 1903, section 718.

"The word 'knowingly' imports only a knowledge that the facts exist which bring the act or omission within the provisions of the penal code. It does not require any knowledge of the unlawfulness of such act or omission."

Upon the whole case, we are of opinion that the instruction given was right and proper, that the proof was sufficient to warrant the verdict of the jury, and that the judgment of the trial court must be affirmed.

*Affirmed.*