312 S.E.2d 31

**STATE of West Virginia**

v.

**Debra LAMBERT.**

No. 15952.

Supreme Court of Appeals of
West Virginia.

Jan. 26, 1984.

Douglass & Douglass, Ernest M. Douglass, Parkersburg, for appellant.

Harry G. Deitzler, Pros. Atty., Richard M. Richmond, Asst. Pros. Atty., Parkersburg, for appellee.

McGRAW, Justice:

The appellant, Debra Lambert, appeals from a conviction of welfare fraud rendered against her by a jury in the Circuit Court of Wood County. The appellant was sentenced to an indeterminate term of from one to five years. Execution of her sentence, however, was suspended, and she was placed on three years probation. Although the appellant raises several assignments of error, we find one to be dispositive, and reverse solely on that point.

The evidence concerning the alleged welfare fraud was uncontroverted. On July 28, 1980, the appellant, accompanied by her husband, Vernon Lambert, applied for public assistance based upon their mutual unemployment at the Department of Welfare Office in Parkersburg. Based upon this application, the Lamberts were found to be eligible for Aid to Families with Dependent Children and food stamps. The Lamberts were informed at the time of their application that any change in their employment, income, or other status was to be reported to the Department of Welfare.

The appellant's husband became employed on December 18, 1980, earning $391.96 to $644.89 monthly between January and July 1981. Neither the appellant nor her husband reported this employment and resultant income to the Department of Welfare. Consequently, they continued to receive benefits totaling $387.00 per month until July 1981, when their case worker at the Department of Welfare received an anonymous telephone call informing her of Mr. Lambert's employment.

On April 12, 1982, a Wood County grand jury returned a six count indictment against the appellant and her husband for welfare fraud. Upon the appellant's motion, her case was severed from that of her husband, who plead guilty to a misdemeanor pursuant to a plea bargaining agreement. The appellant's trial began on May 19, 1982, and on the following day, she was found guilty of fraudulently obtaining welfare assistance in excess of five hundred dollars in violation of West Virginia Code § 9–5–4 (1976).[1]

The appellant's sole defense went to criminal intent. She chronicled a history of violence directed against her by her husband. Prior to their marriage, while the appellant was pregnant with Vernon Lambert's child, she testified that he came

---

1. West Virginia Code § 9–5–4 provides:

Any person who obtains or attempts to obtain, or aids or abets an applicant or recipient in obtaining or attempting to obtain, by means of a willfully false statement or misrepresentation or by impersonation or any other fraudulent device:

(1) Any class of welfare assistance to which the applicant or recipient is not entitled; or

(2) Any class of welfare assistance in excess of that to which the applicant or recipient is justly entitled; shall upon conviction be punished as follows:

(a) If the aggregate value of all funds or other benefits obtained or attempted to be obtained shall be five hundred dollars or less, the person so convicted shall be guilty of a misdemeanor and shall be fined not more than one thousand dollars or confined in jail not exceeding one year; or

(b) If the aggregate value of all funds or other benefits obtained or attempted to be obtained shall exceed five hundred dollars, the person so convicted shall be guilty of a felony and shall be fined not more than five thousand dollars or confined in the penitentiary not less than one year nor more than five years.

home drunk one night in a rage because she had unsuccessfully attempted to locate him in a local tavern. She stated that,

> Vernon came in drunk and he pulled me out of bed and he just threw me out of bed and started calling me some names and he took me and threw me back into the front room and got his gun and loaded it and put it to my head and said he was going to blow my head off. He said I had no right to check up on him and he took the gun and shot it out the window and shot it to prove to me that the gun was loaded.

After their marriage, their relationship continued to be marred by Vernon Lambert's violent acts toward the appellant. On one occasion the appellant desired medical attention after one of his beatings, but he refused to allow her to leave. She testified that, as a general rule, her husband prevented her from leaving the house alone and forced her to accompany him to his place of employment when he was working in order to keep an eye on her. Although the appellant did not report her husband's behavior to the Department of Welfare or to the police, her testimony concerning his physical abuse was corroborated by her grandmother, with whom she frequently sought shelter, and by her former sister-in-law, who witnessed Vernon Lambert's physical abuse of the appellant on several occasions.

In addition to acts of physical abuse which were unrelated to the appellant's professed desire to report her husband's employment to the Department of Welfare, the appellant also related other incidents in which the communication of that desire resulted in verbal and physical abuse by her husband. The appellant testified that on December 18, 1980, the day her husband returned to work,

> Vernon came in ... and said that he got the job at Winans and I said that's great, now we can get off welfare. Vernon looked at me and he pointed his finger at me and he said, you keep your mouth shut, what the welfare doesn't know won't hurt them, just keep your mouth shut.

This testimony was corroborated by the appellant's grandmother, who was present during this conversation. The appellant also described several other incidents in which her husband abused her after she indicated a desire to inform the Department of Welfare of his employment. The appellant's testimony concerning these incidents was corroborated by the appellant's former sister-in-law. In describing why she did not report her husband's violent behavior to the authorities, the appellant stated, "I was afraid to tell anyone because if Vernon ever found out that I was telling anyone, he would have beat me to death."

Recently, in Syllabus Point 1 of *State v. Tanner*, 171 W.Va. 529, 301 S.E.2d 160 (1982), this Court analyzed the effect of compulsion, coercion, or duress upon criminal intent, stating:

> In general, an act that would otherwise be a crime may be excused if it was done under compulsion or duress, because there is then no criminal intent. The compulsion or coercion that will excuse an otherwise criminal act must be present, imminent, and impending, and such as would induce a well-grounded apprehension of death or serious bodily harm if the criminal act is not done; it must be continuous; and there must be no reasonable opportunity to escape the compulsion without committing the crime. A threat of future injury is not enough.

Tanner's primary defense to his two convictions of aggravated robbery was that he had been coerced into committing the crimes while in a highly intoxicated mental state. The trial court, however, rejected Tanner's two proposed coercion instructions. While this Court found Tanner's proposed instructions to be "legally unobjectionable" and recognized that "he was entitled to an instruction on his theory of defense if the evidence supporting it was sufficient to take the question to the jury," we held that his uncorroborated testimony concerning the alleged coercion was insufficient to warrant a coercion instruction. 171 W.Va. at 531–532, 301 S.E.2d at 163–64.

In the present case, the appellant's testimony concerning the coercion of her husband was not uncorroborated, and was sufficient to warrant the giving of a coercion instruction to the jury. Unlike Tanner, however, the appellant in the present action did not offer a "legally unobjectionable" instruction.[2] In Syllabus Point 4 of *State v. Simmons*, 172 W.Va. 590, 309 S.E.2d 89 (1983), this Court stated the general rule: " 'Proffered instructions which do not correctly state the law, which are at variance with the charge in the indictment, which are not supported by the evidence, or which are abstract, are erroneous and should be refused.' Syllabus Point 3, *State v. Starr*, 158 W.Va. 905, 216 S.E.2d 242 (1975)." Therefore, because the instruction tendered by the appellant was an incorrect statement of the coercion defense, it was properly refused by the trial court.

The record does not reflect that any attempt was made by the appellant to either offer another coercion instruction or amend the instruction that was refused. In *State v. Vance*, 162 W.Va. 467, 250 S.E.2d 146, 151 (1978), we stated, "as a general rule trial courts have no duty to give instructions *sua sponte* on collateral issues not involving an element of the offense being tried." This rule also applies when, after the rejection of a proposed instruction on a collateral issue, a defendant fails to amend or offer a new instruction properly defining the law on the collateral issue. *See State v. Sparks*, 171 W.Va. 320, 298 S.E.2d 857, 862 (1982).

Despite our rule concerning the absence of duty on the part of trial courts to amend erroneous instructions on collateral issues, this Court has recognized that, when noncollateral issues are involved, it may be erroneous for a trial court to refuse to amend a proffered instruction. In the single Syllabus Point of *State v. Brown*, 107 W.Va. 60, 146 S.E. 887 (1929), this Court stated,

As a general rule, a trial court is under no duty to correct or amend an erroneous instruction, but where, in a criminal case, a defendant has requested an instruction, defective in some respect, on a pertinent point vital to his defense, not covered by any other charges, and which is supported by uncontradicted evidence; and because of the state of the evidence relied upon for conviction, and the peculiar facts and circumstances of the case, a failure to instruct on this important point, may work a miscarriage of justice, it is error for the trial court not to correct the instruction and give it in proper form.

Ultimately, the responsibility to ensure in criminal cases that the jury is properly instructed rests with the trial court. *See State v. Dozier*, 163 W.Va. 192, 255 S.E.2d 552 (1979). As this Court stated in *State v. Romine*, 166 W.Va. 135, 272 S.E.2d 680, 681 (1980), "The jury must be clearly and properly advised of the law in order to render a true and lawful verdict."

The appellant's sole defense went to negate criminal intent, an element of the crime charged, and therefore a noncollateral issue. The State contends that the inclusion in the instructions given of language informing the jury that the appellant must have "intentionally and wilfully" misrepresented her husband's employment status was sufficient, and that language addressing the negation of intent was unnecessary. We find this contention to be flawed.

This Court recognized in *State v. Dozier*, 163 W.Va. at 197, 255 S.E.2d at 555, that where criminal intent is an element of the offense charged, a defendant is entitled "to elicit testimony about . . . prior physical beatings . . . in order that the jury may fully evaluate and consider the defendant's mental state at the time of the commission of the offense." Not only are defendants entitled to present evidence to support such theories as the battered

---

**2.** Defendant's Instruction No. 1, the only one offered on the issue of coercion, provided, "If you believe beyond a reasonable doubt that Debra Lambert failed to report her husband's employment to the Department of Welfare; but that she did so because she feared bodily harm at the hands of her husband, Vernon Lambert, you must find Debra Lambert not guilty." Not only is this instruction inartfully worded, it erroneously omits such elements as imminence, reasonableness, seriousness, continuousness, and inability to escape.

spouse syndrome, which go to negate criminal intent, they are also entitled to receive proper instructions on those theories. In the present action, for example, the absence of a proper instruction on coercion left the jury with no criteria with which to determine whether criminal intent had been negated. Therefore, the jury was deprived of the opportunity to intelligently weigh the evidence elicited on coercion in determining whether criminal intent was indeed present.

For the foregoing reasons, the appellant's conviction is reversed and set aside and the case is remanded.

Reversed and remanded.